UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAKINAH A. TANZIL,

        Plaintiff,                     CIVIL ACTION NO. 12-13580

    vs.                               DISTRICT JUDGE GERSHWIN A. DRAIN

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 9) be denied, Defendant's motion for summary judgment (docket no. 13) be granted, and Plaintiff's complaint be dismissed.

**II.    PROCEDURAL BACKGROUND**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in March 2010, alleging disability beginning June 7, 2008. (TR 123-30).  The applications were denied and Plaintiff filed a timely request for a *de novo* hearing.  On May 3, 2011 Plaintiff appeared with counsel in Livonia, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Richard L. Sasena.  (TR 31-54).  Vocational Expert (VE) Luann Castellana also appeared and testified at the hearing.  In a May 26, 2011 decision the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act from June 7, 2008, the alleged onset of disability date, through May 26, 2011, the date of the decision, because she remained capable of performing jobs that exist in significant numbers in the

national economy. The Appeals Council declined to review the ALJ's decision and Plaintiff filed the instant action for judicial review.

## III.     PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff was thirty-one years old on her alleged disability onset date. She received a bachelor's degree in Information Technology, earning A's and B's in her courses, and she is pursuing a Master's Degree. (TR 39, 41). She testified that she has a tutor monitor her classes and review the course work with her because she has a difficult time concentrating and she gets sleepy. (TR 40). Plaintiff lives with her minor child. Her mother visits five days each week to help with the housework or with her daughter's homework. (TR 37, 41). She reported that she is capable of caring for her daughter but states that her mother assists because she has low energy. (TR 42). She has a driver's license and she drove herself to the hearing. (TR 48). Plaintiff testified that she has worked as a flight attendant. (TR 36). She claims that she is no longer able to work because she has mood swings, medication induced drowsiness and restlessness, nervousness, low self esteem, abnormal muscle movements, and shoulder and back pain. (TR 36).

Plaintiff testified that she sleeps eight to ten hours a night, but also claims that she has difficulty sleeping despite her fatigue when she forgets to take her evening medication. (TR 42). She reported that she experiences side effects from medication which include nausea, diarrhea, constipation, dizziness, and drowsiness. (TR 43). She attends class two days a week and claims that she does not interact much with the other students. On days when she does not attend class she spends the day in bed watching television. (TR 45).

### B.     Medical Evidence

2

The undersigned has thoroughly reviewed the medical evidence and will set forth limited portions of the record below. The record shows that Plaintiff was diagnosed with Bipolar disorder in 2005 after the birth of her child. (TR 209, 254). She had two psychiatric hospitalizations in or around October 2005. (TR 209, 254). In November 2005 Plaintiff began treating with Dr. Kodali at Counseling Associates, Inc. (TR 209, 254). Plaintiff reported doing well overall but complained that she felt tired, with low energy and motivation, and lack of concentration. (TR 255-57, 262). During subsequent counseling sessions Plaintiff reported that she was exercising regularly, was applying for jobs, and had no depression, psychosis, or mood instability. (TR 258). Treatment notes from 2008-2009 reveal that Plaintiff continued to report that she was doing well, with stable moods and an increasing ability to handle stress. (TR 260). She claimed to have no mood swings, no mania, no depression, and normal sleep patterns and appetite. In March 2009 Plaintiff reported doing "okay," but complained that she gets agitated when stressed. (TR 261). The record shows that the therapist decreased or discontinued Plaintiff's Lithium dosage due to complaints of fatigue and documented that the prescription for Geodon could not be increased due to sedation. (TR 262).

On August 20, 2009 psychiatrist Sally Szymanski, D.O., completed a psychiatric evaluation. (TR 221-25). Dr. Szymanski noted that Plaintiff was described in June 2009 as being manic, paranoid, hyperverbal, and agitated. The doctor noted that Plaintiff was hospitalized for bipolar disorder in July 2009 and she had two previous psychiatric hospitalizations in 2005. (TR 221, 295). Dr. Szymanski observed that Plaintiff was irritable but otherwise oriented times three, she had organized and coherent thoughts, fair grooming and hygiene, no hallucinations, and fair concentration. The report states that a typical day for Plaintiff would involve preparing breakfast, dropping off and picking up her daughter, attending classes, studying, and meeting with peers. (TR

233). The doctor noted that Plaintiff was taking the psychiatric medication Geodon and she assigned a preliminary diagnosis of rule out Bipolar I disorder. She assigned a GAF of 48. (TR 225).

Dr. Szymanski completed a second evaluation on June 25, 2010 in which she found that Plaintiff's mood was euthymic, her thought content was organized and coherent, she was cooperative with goal directed speech and good concentration, and she had good grooming and hygiene. (TR 246-47). The doctor diagnosed Plaintiff with Bipolar disorder, NOS and assigned a GAF of 57. On September 17, 2010 Dr. Szymanski completed another mental status evaluation noting that Plaintiff had a diagnosis of Bipolar disorder and a GAF of 60. (TR 294).

Amy S. Johnson, Ph.D. completed an evaluation of Plaintiff's medically determinable mental impairments and a mental residual functional capacity on behalf of the state disability determination service in July 2010. (TR 58-63). Among other things Dr. Johnson determined that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (TR 58). She also found that Plaintiff had understanding and memory limitations and sustained concentration and persistence limitations. (TR 59). In support of these findings, the doctor opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods. (TR 59-60). She found that Plaintiff was not significantly limited in her ability to perform activities within a schedule or perform at a consistent pace without an unreasonable number and length of rest periods. In relevant part the doctor concluded that Plaintiff has the mental capacity to understand, remember and follow simple instructions. She opined that Plaintiff was capable of maintaining sufficient attention and concentration to carry out work-like tasks with reasonable pace and persistence within the context of performing simple, routine, repetitive, concrete, tangible tasks. (TR 61).

In August 2010 Tonya Matiska, LLMSW completed a mental medical source statement which found that as of August 6, 2009 Plaintiff exhibited moderate limitations in her ability to understand and remember detailed instructions, maintain concentration and attention for extended periods of time, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and travel to unfamiliar places or use public transportation. (TR 203-05). In all other assessed areas, Ms. Matiska determined that Plaintiff was only mildly or was not significantly impaired. Ms. Matiska determined that Plaintiff was not limited in her ability to understand, remember and carry out simple instructions, make judgments commensurate with unskilled work, or respond appropriately to supervision, co-workers and typical work situations. (TR 205).

**C.     Vocational Expert Testimony**

The Vocational Expert (VE) testified that Plaintiff worked as a retail manager assistant and medical assistant at a light, skilled level, and as a flight attendant at a semi-skilled, medium level. (TR 19, 51). The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who has the residual functional capacity to perform light work with occasional climbing, balancing, stooping, kneeling, crouching, crawling, and with limitations to simple routine and repetitive tasks with no interaction with the public and only occasional interaction with co-workers. The VE testified that an individual with these limitations could perform light, unskilled jobs such as housekeeping, small products assembly, checking and assorting jobs, and packaging jobs, comprising 14,700 jobs in Southeast Michigan. (TR 51). In addition, the VE testified that the

individual could perform sedentary, unskilled jobs such as production checker/inspector, assembler, and assembly press operator, comprising approximately 9,500 jobs in Southeast Michigan. When prompted by Plaintiff's counsel, the VE testified that the individual must be able to stay on task at least eighty percent of the work day. The VE also testified that if the individual had frequent difficulties responding appropriately to criticism from supervisors or accepting instruction it would impact her ability to work.

### IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2009. (TR 19). He also found that Plaintiff has not engaged in substantial gainful activity since June 7, 2008, the alleged onset date. (TR 19). The ALJ found that while Plaintiff suffered from the severe impairment of Bipolar disorder, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 19-22). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations: (a) occasional stooping, kneeling, crouching, crawling, balancing, or climbing, (b) limited to simple, routine and repetitive tasks, and (c) only occasional contact with co-workers and no contact with the general public. (TR 22-25). The ALJ concluded that Plaintiff was unable to perform her past relevant work but could perform jobs that exist in significant numbers in the national economy. (TR 25-26). Consequently, the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from July 7, 2008, the alleged onset of disability, through May 26, 2011, the date of the ALJ's decision.

### V.     LAW AND ANALYSIS

**A.     Standard Of Review**

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

   1. she was not presently engaged in substantial gainful employment; and
   2. she suffered from a severe impairment; and
   3. the impairment met or was medically equal to a "listed impairment;" or
   4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age,

7

education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.    Analysis**

Plaintiff argues that the ALJ failed to reference her difficulties with fatigue, lack of focus, and concentration, or account for her moderate deficits in concentration, persistence, or pace in the RFC and hypothetical questions he presented to the VE. She seeks a remand for further consideration of this issue.

The ALJ is required to present a hypothetical question that includes only those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993). The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence. *Varley*, 820 F.2d at 779 (citations omitted). "[A] hypothetical question need not incorporate a listing of the claimant's medical conditions, [so long as] the vocational expert's testimony . . . take[s] into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.' " *Infantado v. Astrue*, 263 Fed. Appx 469, 476 (6th Cir. 2008) (quoting *Webb v. Comm'r*, 368 F.3d 629, 632-33 (6th Cir.

8

2004)).

When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's ... limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). In other words, the ultimate question is whether the ALJ's decision was supported by substantial evidence. *See Lewicki v. Comm'r*, 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010). *See also Schalk v. Comm'r*, 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011) (discussing how "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."). *See also Roberts v. Comm'r*, No. 10-14064, 2011 WL 4407221, at *8 (E.D. Mich. Aug. 8, 2011) (noting that "[t]here are cases ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks–but also other cases that have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.").

Limitations in concentration, persistence, or pace may result in the plaintiff being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005). Courts are more likely to order a sentence four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence or pace in

the absence of a medical opinion which found similar moderate deficiencies and which indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r*, No. 10-13643, 2011 WL 6000714 (E.D. Mich. Aug. 30, 2011)).

Here, the ALJ determined that Plaintiff had moderate deficiencies in concentration, persistence, or pace, and he accounted for these limitations in the RFC and hypothetical question to the VE by requiring simple, routine, and repetitive tasks. He based this determination on Plaintiff's testimony, her Adult Function Report, and on the medical evidence of record. The ALJ assigned significant weight to the opinion of Dr. Amy Johnson after concluding that the doctor's opinion was consistent with the medical record of evidence. Dr. Johnson found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. Specifically, she found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods. (TR 59-60). The doctor further found that Plaintiff was not significantly limited in her ability to perform activities within a schedule or perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Johnson concluded that despite Plaintiff's moderate deficiencies in concentration, persistence, or pace, she was capable of maintaining the attention and concentration needed to perform simple, routine, repetitive, concrete, tangible work-like tasks and do so at a reasonable pace and persistence.

The ALJ recognized that Plaintiff complained of drowsiness, low energy, and difficulties with concentrating and focusing. However, he concluded that Plaintiff had fair to poor credibility and he cited specific examples from the record to support his conclusion. The undersigned finds on

the basis of this record that the ALJ properly accounted for Plaintiff's limitations in concentration, persistence or pace and supported his RFC and disability determination with substantial evidence from the record. Therefore, the undersigned recommends that Plaintiff's motion for summary judgment (docket no. 9) be denied and Defendant's motion for summary judgment (docket no. 13) be granted.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.


Dated: August 5, 2013         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 5, 2013         s/ Lisa C. Bartlett
                              Case Manager